IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT ALAN ANTON,

    Plaintiff,                                CV F 05 0412 OWW WMW P

  vs.                                     FINDINGS AND RECOMMENDATIONS

LT. RUIZ, et al.,

    Defendants.

       Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

       This action proceeds on the first amended complaint. Plaintiff, an inmate in the custody of the California Department of Corrections at CSP Lancaster, brings this civil rights action against defendant correctional officials employed by the Department of Corrections at Lancaster State Prison and Corcoran State Prison.[1] Plaintiff names as correctional defendants: Lieutenant Ruiz, Warden Scribner, Correctional Officer Mendez, and "Medical Department and treating physicians."

---

[1] Plaintiff also names as defendants individual inmates. There are no facts alleged that indicate these defendants acted under color of state law. Paratt v. Taylor, 451 U.S. 527, 535 (1981). The inmate defendants must therefore be dismissed.

1

1	 	The first amended complaint is filed in response to an earlier order dismissing the
2	original complaint with leave to amend.  That order noted the following.
3	 	The claims in this lawsuit stem from a disturbance on Tuesday, September 28,
4	2004 at CSP Corcoran B yard.  As plaintiff was approaching his cell, he was attacked by two
5	inmates, who began striking plaintiff in the face.  Plaintiff assumed a defensive posture when two
6	other inmates joined the attack on plaintiff.  Defendant Mendez, the Control Booth Officer, filed
7	eight wooden blocks from a 40mm baton launcher.  Plaintiff alleges that while he was on the
8	ground in a prone position, "numerous shots continued to ring out and ricochet, one directly
9	striking petitioner's left hand, ripping it open to the bone and destroying the knuckle."
10	 	After officials restored control, plaintiff was taken to the Acute Care Hospital.
11	Prior to being taken to the hospital, plaintiff was decontaminated.  Plaintiff alleges that three
12	large canisters of O.C. pepper spray were discharged.  So much so that "the tier was was also
13	extensively slippery."
14	 	Plaintiff was placed in a holding cage to await transportation to Administrative
15	Segregation.  Lt. Ruiz advised plaintiff that "I do not want to do the paperwork on this incident
16	and lock the good white boys down who had nothing to do this, it would be for weeks and your
17	name becomes smut, for being a victim you'll be hurt again.  But I can say you were a participant
18	in the melee, you were getting the better of two fresno car boys and their buddies came to help
19	them."  Plaintiff did not respond to Lt. Ruiz's suggestion.  Plaintiff alleges that Lt. Ruiz falsely
20	accused and charged plaintiff with mutual combat.
21	 	At the Institutional Classification Committee review in Administrative
22	Segregation, Capt. Miller "clearly identify pet. As protecting himself from getting smased and to
23	avoid great bodily injury or harm and in the furtherance of justice any further collection of
24	evidence became unecessary and the Rules Violation Report's specific acts of mutual combat is
25	removed from pet. 'C' central file or never placed there."  Plaintiff alleges that all inmates
26

remained confined to quarters for one day.   Plaintiff was placed in Administrative Segregation on the ground that he was a threat to the safety of others.

### Medical Care

In the order dismissing the original complaint, the Court noted the following. Plaintiff claims that he was denied adequate medical care.  Specifically, plaintiff alleges that after his hand was sutured, "no further evaluation of pet./plaintiff's injured and swollen left hand occurred.  No MRI or X-raying of pet. injuries to see if pet. had suffered any fractures involving second and third metacarpals or soft tissue, which indeed caused abnormal healing position, traumatic deformities and one bent nose."  Plaintiff alleges that when he was transferred to Lancaster State Prison, he was told that the treatment for his disfigurement was cosmetic and was therefore disapproved.

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97. 104 (1976)).  Lopez takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference." First, a court must examine whether the plaintiff's medical needs were serious.  See Id.  Second, a court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment." Id. at 1132.

In order to hold a named defendant liable, plaintiff must allege facts indicating that the defendant knew of a serious risk to plaintiff's health, and disregarded that risk. Allegations of inadequate care that amount to negligence fail to state a claim for relief.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

In the original complaint, plaintiff failed to identify any particular individual defendants that acted with deliberate indifference to plaintiff's health as that term is described above. Plaintiff alleged that after control was restored, he was decontaminated, taken to the Acute Care Hospital and treated. Plaintiff alleged that medical staff in general ignored his requests for further treatment, but he did not identify any particular individuals. In order to hold an individual liable, plaintiff must charge that individual with conduct that indicates deliberate indifference. In the first amended complaint, Plaintiff identifies Dr. Cassin, a physician at Corcoran.

Plaintiff alleges that Dr. Cassin advised Plaintiff that his injury was cosmetic, and could not therefore be treated pursuant to policy. Plaintiff also alleges that he had difficulty breathing throughout the previous night, "jarring his heart." Plaintiff appears to be concerned that the excessive force incident will lead to a heart attack. Though Plaintiff identifies an individual, the allegations against that individual are vague. The only specific allegation regarding a refusal to treat Plaintiff is based upon policy considerations regarding cosmetic treatment. There are no specific allegations that Dr. Cassin knew of a serious risk to Plaintiff's health and acted with disregard to that risk, resulting in injury to Plaintiff. Plaintiff does not, therefore, state a claim for relief on this claim.

Excessive Force

Plaintiff contends that defendant Mendez, the officer in the control tower, engaged in excessive force when he fired the wooden rounds. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The proscription applies to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660 (1962). Prison brutality is part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny. Ingraham v. Wright, 430 U.S. 651, 669,

1  (1977).  The Eighth Amendment is specifically concerned with the unnecessary and wanton
2  infliction of pain in penal institutions and serves as the primary source of substantive protection
3  to convicted prisoners in cases where the deliberate use of force is challenged as excessive and
4  unjustified.  Whitley v. Albers, 475 U.S. 312, 327,(1986); see also Graham v. Connor, 490
5  U.S.386, 392 n.10 (1989).
6       To constitute the "unnecessary and wanton infliction of pain" in the prison context, the
7  United States Supreme Court requires that both the objective and subjective component of the
8  Eighth Amendment be satisfied.  Wilson v. Seiter, 501 U.S. 294 (1991).  First, the deprivation
9  complained of must be sufficiently serious by objective standards.  Id. 501 U.S. at 297.  A
10 deprivation is sufficiently serious if it denies "'the minimal civilized measure of life's
11 necessities.'"  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (violation requires
12 showing of unnecessary and wanton infliction of pain resulting in a physical injury which is of
13 such base, inhumane and barbaric proportions as to shock the sensibilities)).  See Hudson v.
14 McMillian, 503 U.S.1,(1992) (objective prong not met where injury is de minimus); but see,
15 Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993) (Hudson substantial injury requirement met by
16 psychological harm alone, such that body searches of female inmates by male guards constitutes
17 cruel and unusual punishment).
18      Second, the prison officials responsible for the deprivation must act with a sufficiently
19 culpable state of mind by subjective standards.  Id.  To be sufficiently culpable, "the offending
20 conduct must be wanton."  Wilson, 501 U.S. at 299.  In situations where officials are not acting
21 under pressure, "deliberate indifference" constitutes wantonness.  Id. at 299-300.   Where a
22 prison security measure is undertaken to resolve a disturbance, the question of whether the
23 measure taken inflicted unnecessary and wanton pain and suffering in violation of the Eighth
24 Amendment turns on whether force was applied in a good faith effort to maintain or restore
25 discipline, or maliciously and sadistically for the purpose of causing harm.  Whitley v. Albers,
26

475 U.S. 312, 320-21 (1986).

In the order dismissing the original complaint, Plaintiff was advised that the facts alleged indicated that a fight involving five inmates was underway. Plaintiff alleged no facts indicating that Mendez acted with wantonness. That Mendez's shots failed to hit the intended target does not subject him to liability. Plaintiff's conclusory allegation that Mendez was insufficiently trained does not subject him to liability. That Mendez had only been on the job 8 months does not establish a constitutional violation. Plaintiff was advised that he must allege some facts indicating that Mendez acted with wantonness and recklessness. An allegation that Mendez fired wooden rounds in response to inmate on inmate combat, with nothing more, fails to state a claim for relief.

In the first amended complaint, Plaintiff alleges that over the two weeks prior to the incident at issue, Plaintiff had verbal altercations with Mendez. Plaintiff also alleges that Mendez fired the shots at Plaintiff after order had been restored. The court finds that Plaintiff states a cognizable claim for relief as to C/O Mendez for excessive force.

In an order entered on May 24, 2007, the court found that the first amended complaint stated a claim for relief against C/O Mendez for excessive force. The court granted Plaintiff leave to file an amended complaint that corrects the defects noted regarding the medical care claim. Plaintiff was specifically advised that should he fail to file an amended complaint, the court would direct service of process upon Defendant Mendez, and recommend dismissal of the remaining defendants.

Plaintiff has failed to file a second amended complaint. Accordingly, IT IS HEREBY RECOMMENDED that Lieutenant Ruiz, Warden Scribner, and Plaintiff's medical care claim be dismisssed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within

thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 11, 2008**               /s/  **William M. Wunderlich**
                                     UNITED STATES MAGISTRATE JUDGE