IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT ALAN ANTON,

    Plaintiff,                        1:05 CV 00412 OWW YNP SMS (PC)

  vs.                                FINDINGS AND RECOMMENDATION
                                    RE MOTION TO DISMISS (DOC 47)

C/O MENDEZ,

    Defendant.

       Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). Plaintiff has opposed the motion.[1]

       This action proceeds on the April 11, 2006, First Amended Complaint. Plaintiff, an inmate in the custody of the California Department of Corrections at CSP Solano, brings this civil rights action against defendant Correctional Officer Mendez, an employee of the California Department of Corrections and Rehabilitation at Corcoran State Prison.

       The claims in this lawsuit stem from a disturbance on Tuesday, September 28, 2004 at

---

[1] On July 24, 2008, an order was entered, dismissing Defendants Ruiz and Scribner, as well as Plaintiff's medical care claim. This action proceeds on the sole remaining defendant, C/O Mendez, on Plaintiff's failure to protect claim.

1

CSP Corcoran B yard.  As Plaintiff was approaching his cell, he was attacked by two inmates, who began striking Plaintiff in the face.  Plaintiff assumed a defensive posture when two other inmates joined the attack on Plaintiff.   Defendant Mendez, the Control Booth Officer, fired eight wooden blocks from a 40mm baton launcher.   Plaintiff alleges that while he was on the ground in a prone position, "numerous shots continued to ring out and ricochet, one directly striking petitioner's left hand, ripping it open to the bone and destroying the knuckle."

At the Institutional Classification Committee review in Administrative Segregation, Capt. Miller "clearly identify pet. As protecting himself from getting smashed and to avoid great bodily injury or harm and in the furtherance of justice any further collection of evidence became unnecessary and the Rules Violation Report's specific acts of mutual combat is removed from pet. 'C' central file or never placed there."   Plaintiff alleges that all inmates remained confined to quarters for one day.   Plaintiff was placed in Administrative Segregation on the ground that he was a threat to the safety of others.

Defendant seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b) on the ground that Plaintiff has failed to exhaust his available administrative remedies prior to filing suit. 42 U.S.C. 1997e(a).   The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]  . . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

> Section 7 of the Prison Litigation Reform Act was amended to read as follows:
>
> (a) APPLICABILITY OF ADMINISTRATIVE REMEDIES.  No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983) or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

1  42 U.S.C. § 1997e(a).  In Booth v. Churner,532 U.S. 731 (2001).  The Supreme
2  Court, in addressing the question of whether a prisoner need exhaust available remedies when
3  monetary damages are unavailable, held that "Congress has mandated exhaustion clearly enough,
4  regardless of the relief offered through administrative procedures."  Id. at 1821.  In order to bring
5  his claim in federal court, plaintiff must completely exhaust his available administrative
6  remedies.  In California, there are four levels of review - informal level, first formal level, second
7  formal level, and third formal level.  The third formal level constitutes the Director's decision on
8  appeal.  Cal. Code Regs. Tit. 15, § 3084.5(e)(2).

9  The event that gives rise to this lawsuit occurred on September 28, 2004.  In order to
10 survive Defendant's motion, Plaintiff must show that he exhausted his available administrative
11 remedies by filing ain inmate grievance regarding Defendant's conduct on that date  and pursuing
12 it to the final level of review.   Defendant supports his motion with the declarations of J. Jones
13 and N. Grannis.[2]

14 J. Jones is the Appeals Coordinator at CSP Corcoran, and as the custodian of records, can
15 verify if an inmate at Corcoran has submitted a formal level inmate grievance (Inmate Appeal Form
16 602) on a particular issue.  Jones Decl., ¶¶ 1,2.   Regarding Plaintiff, Jones declares that the
17 following:

> I have conducted a search of the appeals file to see whether it contains appeals from inmate Anton concerning the allegations in Plaintiff's complaint.  Inmate Anton filed a number of appeals during his incarceration at CSP.  A true and correct copy of the log reflecting those appeals is attached as Exhibit A.  Those appeals were filed by Inmate Anton prior to the events alleged in the complaint.  Inmate Anton never filed any appeals concerning the allegations in the complaint.

Jones Decl., ¶ 13.

---

[2]Defendant correctly notes that in deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)(citing. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1998)).

A review of Exhibit A reveals that Plaintiff filed numerous prison grievances at CSP Corcoran between January 30, 2002 and August 12, 2004. There are no grievances dated later than August of 2004.

Defendant also submits the declaration of N. Grannis, Chief of the Inmate Appeals Branch in Sacramento. Ms. Grannis declares that administrative appeals filed by prisoners are assigned log numbers and maintained in the prisoner's central file and also with the Inmate Appeals Coordinator where the appeal was filed. All final or third level appeals filed and that are rejected by the Director's office are logged and recorded in a computerized database and are printed in a document entitled "Appellant Appeal History." Grannis decl., ¶ 9.

Regarding Plaintiff's appeal history, Ms. Grannis declares that:

> A search of the IAB database and files reveals that the IAB has not accepted for Director's Level review any appeals from inmate Anton, CDCR # D92902, regarding Anton's allegations that he was shot in the hand with a 40 mm baton launcher or other weapon, causing him pain and disfiguring his hand. As indicated in the IAB Appellant History tracking system concerning inmate Anton, a true copy of which is attached to this declaration as Exhibit A, there have been only two Director's Level decisions that have been accepted regarding inmate Anton after the incident alleged in the complaint in 2004. The first appeal, IAB number 0608013, concerns a "medical"issue and was accepted in January 2007, over two years after the incident alleged in the complaint. The second appeal, IAB number 0608513, concerns "living conditions" and was accepted in January 2007, also over two years from the incident alleged in the complaint. Neither of these appeals concerns the incident alleged in the complaint.

Id., ¶ 11.

In his opposition, Plaintiff contends that he did file a grievance. In the first paragraph of page 3 of his opposition, Plaintiff states that he filed an "832.5 citizen complaint" on October 2, 2004. On October 14, 2004, Plaintiff was transferred to CSP Lancaster. Plaintiff states that on November 6, 2004, "the 602 and assorted documents remained . . . . unanswered & a letter of inquiry was sent to corcoran appeals coordinator requesting a log # or screening of . . . complaint and moving paper."

4

Plaintiff contends that he requested a copy of his citizen's complaint from Corcoran State Prison.

On January 5, 2005, Plaintiff was questioned regarding the incident at Corcoran. Plaintiff "did inquire into the 602 documents," and was told that they would be sent. On January 17, 2005, Plaintiff, "seeing that an effective admin. remedy was futile," wrote a letter to the Governor. In April of 2005, Plaintiff requested, in the form of a motion, the "Fresno Appellate Court" to intervene and investigate due process allegations." Plaintiff refers to his exhibits as evidence of his notices of inquiry.

The exhibits attached to Plaintiff's opposition consist of the USM 285 form Plaintiff completed for service of process upon Defendant. Plaintiff also submits a handwritten form captioned as a "§ 832.5 citizen's complaint." Plaintiff does include an inmate grievance form, CDCR Form 602, dated September 30, 2006 and assigned number 06-03417. The grievance was filed at CSP Lancaster, and addresses Plaintiff's request for emergency dental care. Plaintiff sought treatment by an "outside professional."

Plaintiff does not, however, submit any evidence that he filed a grievance challenging the conduct of Defendant prior to filing suit. Plaintiff filed a document styled as an opposition to Plaintiff's reply, Plaintiff attaches a grievance that directly addresses the conduct at issue in this lawsuit. The grievance, however, is dated August 1, 2008. Plaintiff also attaches a letter from the Chief if the Inmate Appeals Branch, advising him that he must complete his grievance through the second level of review.

Defendant has made a showing that Plaintiff has failed to file an administrative grievance challenging Defendant Mendez's conduct on September 28, 2004. Plaintiff, though arguing that he did exhaust his administrative remedies, does not come forward with any evidence that he has done so. That Plaintiff filed a "citizen's complaint" does not absolve him of the requirement to file an administrative grievance in accordance with CDCR regulations. Though Plaintiff did attempt to exhaust his remedies by filing a grievance in August of 2008, the Court of Appeals has held that

1  District Courts are required under Prison Litigation Reform Act (PLRA) to dismiss actions without
2  prejudice where prisoner failed to exhaust administrative remedies prior to filing suit but was in
3  process of doing so when motion to dismiss was filed. <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir.
4  2002). The Court finds that Plaintiff has not come forward with any evidence that he exhausted his
5  available administrative remedies prior to filing suit.

6        Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss be
7  granted, and this action be dismissed for Plaintiff's failure to exhaust his available administrative
8  remedies prior to filing suit.

9        These findings and recommendations are submitted to the United States District Judge
10 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days
11 after being served with these findings and recommendations, any party may file written objections
12 with the court and serve a copy on all parties. Such a document should be captioned "Objections to
13 Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served
14 and filed within ten days after service of the objections. The parties are advised that failure to file
15 objections within the specified time waives all objections to the judge's findings of fact. See <u>Turner</u>
16 <u>v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may
17 waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19 IT IS SO ORDERED.

20 **Dated:   August 21, 2009**          /s/ Sandra M. Snyder
                                                      UNITED STATES MAGISTRATE JUDGE